IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROXANNE GANT,<br>on behalf of herself and all<br>others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>FONDREN ORTHOPEDIC GROUP L.L.P.,<br><br>      Defendant. | § § § § § § § § § § § | Civil Action No. 4:16-CV-00648 |

**DEFENDANT FONDREN ORTHOPEDIC GROUP L.L.P.'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR LACK OF SUBJECT-MATTER JURISDICTION
<u>AND FOR FAILURE TO STATE A CLAIM</u>**

Christopher L. Dodson
Joseph M. Cox
Yvonne Y. Ho
BRACEWELL LLP
711 Louisiana Street, Suite 2300
Houston, Texas  77002-2781
713-223-2300 (telephone)
713-221-1212 (facsimile)
chris.dodson@bracewelllaw.com
joe.cox@bracewelllaw.com
yvonne.ho@bracewelllaw.com

ATTORNEYS FOR DEFENDANT
FONDREN ORTHOPEDIC GROUP L.L.P.

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................... ii

SUMMARY OF ARGUMENT ........................................................................................1

FACTUAL BACKGROUND ...........................................................................................2

ARGUMENT ...................................................................................................................5

I.     THE COURT SHOULD DISMISS THIS SUIT FOR LACK OF
SUBJECT-MATTER JURISDICTION. ...................................................5

     A.    Plaintiff's Lack of Article III Standing Warrants Dismissing This
Suit for Lack of Subject-Matter Jurisdiction under Rule 12(b)(1). .............6

     B.    Plaintiff's Allegations of "Increased Risk of Identity Theft and
Credit Card Fraud" Are Insufficient to Confer Standing under
Article III. ...........................................................................................7

          1.    In Spokeo, the Supreme Court held that merely alleging a
statutory violation does not confer a plaintiff with standing
to sue. ....................................................................................7

          2.    Plaintiff's speculation about increased risks of potential
future injury does not constitute a concrete or imminent
injury necessary to establish standing. ..........................................8

          3.    Plaintiff fails to demonstrate a particularized injury .....................12

II.    ALTERNATIVELY, THIS SUIT SHOULD BE DISMISSED FOR
FAILURE TO STATE A CLAIM. .........................................................12

     A.    To Avoid Dismissal under Rule 12(b)(6), Plaintiff Must State a
Plausible Claim for Relief. .................................................................13

     B.    Plaintiff Failed to Plead a Plausible Claim for a Willful Violation
of FACTA. .......................................................................................14

     C.    Any Request to Amend the Pleading Should Be Denied as Futile. ..........19

PRAYER ........................................................................................................................21

CERTIFICATE OF SERVICE ......................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*U.S. ex rel. Adrian v. Regents of Univ. of Cal.*,
    363 F.3d 398 (5th Cir. 2004) .................................................20

*Andrade v. Desert Champions LLC*,
    113 F. Supp. 3d 1020 (N.D. Cal. 2015) ..........................15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................13, 14, 16, 18, 20

*Bailey v. State Farm Lloyds*,
    No. H-00-3638, 2001 WL 34106907 (S.D. Tex. Apr. 11, 2001) (Gilmore, J.) ......................13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................13, 14, 18

*Bormes v. United States*,
    759 F.3d 793 (7th Cir. 2014) ............................11

*Broderick v. 119TCbay*,
    LLC, 670 F. Supp. 2d 612 (W.D. Mich. 2009).........................4

*Bynane v. Bank of N.Y. Mellon*,
    No. H-15-2901, 2015 WL 8764272 (S.D. Tex. Dec. 15, 2015) (Atlas, J.)..............19

*Clapper v. Amnesty Int'l, USA*,
    133 S. Ct. 1138 (2013)..........................................9, 10

*Crane v. Johnson*,
    783 F.3d 244 (5th Cir. 2015) ............................6

*Crupar-Weinmann v. Paris Baguette Am., Inc.*,
    No. 13 Civ 7013 (JSR), 2014 WL 2990110 (S.D.N.Y. Jun. 29, 2014),
    *rev'd on other grounds*, No. 14-3709 (2d Cir. Jun. 30, 2016) ........15, 16, 18, 19, 20

*Crupar-Weinmann v. Paris Baguette Am., Inc.*,
    No. 14-3709 (2d Cir. Jun. 30, 2016) ................16

*Galaria v. Nationwide Mut. Ins. Co.*,
    998 F. Supp. 2d 646 (S.D. Ohio 2014) .............................10

*Gardner v. Appleton Baseball Club, Inc.*,
    No. 09-C-705, 2010 WL 1368663 (E.D. Wis. Mar. 31, 2010) ...............18

*Giordano v. Wachovia Secs., LLC*,
No. 06-476 (JBS), 2006 WL 2177036 (D.N.J. Jul. 31, 2006) .................................................10

*Green v. eBay Inc.*,
No. 14–1688, 2015 WL 2066531 (E.D. La. May 4, 2015) ......................................................9

*Katz v. Donna Karan*,
No. 14 Civ. 740 (PAC), 2015 WL 405506 (S.D.N.Y. Jan. 29, 2015),
*rev'd on other grounds*, No. 15-0464 (2d Cir. Jun. 30, 2016) .....................................16, 17, 18

*Katz v. Donna Karan*,
No. 15-0464 (2d Cir. Jun. 30, 2016) ......................................................................................16

*Key v. DSW, Inc.*,
454 F. Supp. 2d 684 (S.D. Ohio 2006) ..................................................................................10

*Komorowski v. All-Am. Indoor Sports, Inc.*,
No. 13-2177-SAC, 2013 WL 4766800 (D. Kan. Sept. 4, 2013)............................................16

*Legate v. Livingston*,
No. 15-40079, 2016 WL 2909229 (5th Cir. May 18, 2016)..................................................20

*Los Angeles v. Lyons*,
461 U.S. 95 (1983)..............................................................................................................9, 10

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)........................................................................................6, 8, 9, 10, 12

*McLaughlin v. Richland Shoe Co.*,
486 U.S. 128 (1988)................................................................................................................15

*Miller-Huggins v. SpaClinic, LLC*,
No. 09 C 2677, 2010 WL 963924 (N.D. Ill. Mar. 11, 2010) ...........................................16, 18

*Montoya v. FedEx Ground Package Sys., Inc.*,
614 F.3d 145 (5th Cir. 2010) .................................................................................................13

*Pervasive Software Inc. v. Lexware GmbH & Co.*,
688 F.3d 214 (5th Cir. 2012) .................................................................................................19

*Peters v. St. Joseph Servs. Corp.*,
74 F. Supp. 3d 847 (S.D. Tex. 2015) (Hoyt, J.).......................................................................9

*Pierce v. Hearne Indep. Sch. Dist.*,
600 F. App'x 194 (5th Cir. 2015) ...........................................................................................19

*Polanco v. Omnicell, Inc.*,
988 F. Supp. 2d 451 (D.N.J. 2013) .........................................................................................10

*Raines v. Byrd*,
    521 U.S. 811 (1997)......................................................................................6

*Reilly v. Ceridian Corp.*,
    664 F.3d 38 (3d Cir. 2011)........................................................................10

*Rivera v. Wyeth-Ayerst Labs.*,
    283 F.3d 315 (5th Cir. 2002) ....................................................................12

*Safeco Ins. Co. of Am. v. Burr*,
    551 U.S. 47 (2007)..................................................................................4, 14

*In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*,
    45 F. Supp. 3d 14 (D.D.C. 2014) .............................................................10

*Simon v. E. Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976)....................................................................................12

*Soualian v. Int'l Coffee & Tea LLC*,
    No. CV 07-502-RGK, 2007 WL 4877902 (C.D. Cal. Jun. 11, 2007) ....................................11

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) .................................................................. *passim*

*Strautins v. Trustwave Holdings, Inc.*,
    27 F. Supp. 3d 871 (N.D. Ill. 2014) ...........................................................9

*Torongo v. Robert G. Roy*,
    No. 15-81490-MIDDLEBROOKS, 2016 WL 1388852 (S.D. Fla. Apr. 6,
    2016) ....................................................................................................17, 18

*Vidoni v. Acadia Corp.*,
    No. 11-cv-00448-NT, 2012 WL 1565128 (D. Maine Apr. 27, 2012) ..............................15, 16

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990)....................................................................................6

**Statutes**

Credit and Debit Card Receipt Clarification Act of 2007, Pub. L. No. 110-241, §
    2(a)(1), 122 Stat. 1565 (codified at 15 U.S.C. § 1681n(d)) ................................4, 5, 11

Fair and Accurate Credit Transactions Act, Pub. L. No. 108-159, 117 Stat. 1952
    (2003) (codified at 15 U.S.C. §§ 1681a–x)......................................... *passim*

Fair Credit Reporting Act of 1970, 15 U.S.C. § 1681, *et seq.* ...............................3, 7, 11

**Other Authorities**

Michael E. Chaplin, *What's So Fair About the Fair and Accurate Credit
Transactions Act?*, 92 MARQ. L. REV. 307, 331 (2008) .......................................................11

**Rules**

FED. R. CIV. P. 12(b)(1) ...........................................................................................................1, 2, 6

FED. R. CIV. P. 12(b)(6)....................................................................................1, 2, 12, 13, 17, 19

FED. R. CIV. P. 15(a) ...................................................................................................................19

**Constitutional Provisions**

U.S. CONST. art. III, § 2 ....................................................................................................... *passim*

Defendant Fondren Orthopedic Group L.L.P. ("Fondren" or "Defendant") files this Motion to Dismiss (the "Motion") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), seeking to dismiss the claim brought against it in Plaintiff Roxanne Gant's ("Plaintiff") First Amended Class Action Complaint ("Complaint") for lack of subject-matter jurisdiction and, subject thereto, for failure to state a claim upon which relief can be granted.[1]

## SUMMARY OF ARGUMENT

The Complaint alleges that Fondren printed credit-card expiration dates on credit-card receipts issued to its customers, in violation of the Fair and Accurate Credit Transactions Act ("FACTA"). The Complaint proposes a class consisting of persons who paid for services at any Fondren location by credit or debit card in the past two years. The Complaint does not claim actual damages; it seeks only statutory damages for willful violations of FACTA.

The Complaint should be dismissed pursuant to Rule 12(b)(1) for failure to allege an injury-in-fact, as required for Article III standing. The Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), holds that merely claiming a statutory violation does not satisfy this requirement. The only injury Plaintiff alleges is an abstract, speculative, and objectively baseless "increased risk of identity theft and credit and or debit card fraud," which well-established authority confirms is insufficient to demonstrate an injury-in-fact.

Plaintiff's inability to allege actual or non-speculative harm is not surprising, given her allegation that only the expiration date—and not the credit- or debit-card number—was printed on the receipts. Congress, courts, and commentators recognize the obvious fact that merely knowing a card expiration date, without also knowing the credit-card number, is useless to those seeking to commit identity theft or other financial fraud. Regardless, a wealth of authority holds

---

[1] Fondren initially filed a Motion to Dismiss Plaintiff's Original Complaint. (Dkt. Nos. 16, 17.) After Fondren filed its initial motion, Plaintiff filed its First Amended Complaint amending its proposed class definition. (Dkt. No. 20, at ¶ 15.) Fondren therefore files this Motion against Plaintiff's Amended Complaint.

that this type of alleged harm—"increased risk of identity theft"—standing alone is not sufficiently concrete, imminent, or particularized to confer Article III standing.  Because the allegation of increased risk fails the injury-in-fact requirement, this suit should be dismissed for lack of subject-matter jurisdiction.

Even if this Court had subject-matter jurisdiction—it does not—the Complaint should be dismissed under Rule 12(b)(6) because it fails to state a claim upon which relief can be granted.  The Complaint seeks statutory penalties of between $100 and $1,000 per credit- or debit-card transaction; it does not seek actual damages.  To claim statutory penalties, Plaintiff must plausibly allege that Fondren willfully violated FACTA.  Merely alleging that Fondren was aware of FACTA and violated it is insufficient, yet that is all that Plaintiff does.  Moreover, Plaintiff cannot plausibly allege that Fondren willfully violated FACTA given her concession that Fondren complied with other portions of FACTA by redacting the first twelve numbers of the card number from credit- and debit-card receipts.  No further amendment can cure this fatal defect in Plaintiff's pleading.  Absent a dismissal for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), this Court should dismiss the Complaint on the merits.

## FACTUAL BACKGROUND

Fondren is a partnership of orthopedic surgeons.  Fondren owns and operates a clinic within the Texas Orthopedic Hospital near the Texas Medical Center, as well as seventeen additional satellite clinics throughout the greater Houston area.  Patients may pay for services or copayments using credit and debit cards, for which they are typically offered a receipt.

Plaintiff filed her Original Complaint on March 11, 2016.  (Dkt. No. 1.)  Fondren filed its Motion to Dismiss on June 29, 2016.  (Dkt. Nos. 16, 17.)  Plaintiff then filed her First Amended Complaint on July 21, 2016.  (Dkt. No. 20)  In the Amended Complaint, Plaintiff did not amend

her claims or her allegations; instead, Plaintiff merely provided an exclusion for the Court in the proposed class definition.  (Dkt. No. 20, at ¶ 15.)

The Complaint alleges that at some point after December 3, 2006, and within two years of filing this action, Plaintiff paid for services at a Fondren location using her credit card, for which she was issued one or more receipts containing her truncated credit-card number, the expiration date of her credit card, the brand of her credit card, and her name.  (Compl. at ¶ 31.) The Complaint does not include a copy or image of Plaintiff's credit-card receipts, nor does it allege the date of the transaction, the location of the transaction, the amount paid, or whether Plaintiff was a patient of Fondren or paying on behalf of another patient.  (*Id.*)

The only alleged violation of FACTA is the inclusion of credit-card expiration dates on printed receipts.  The Complaint acknowledges that Fondren otherwise complied with FACTA by truncating credit-card numbers.  (*Id.*)  Based upon this alleged violation, the Complaint proposes a class of all Fondren consumers that paid by credit or debit card within two years from the date of suit.  (Compl. at ¶ 14.)

The Complaint does not allege that Plaintiff was actually injured by the inclusion of an expiration date on her receipt.  The Complaint does not allege that Plaintiff was the victim of identity theft, or incurred any costs, as a result of the inclusion of an expiration date on a receipt. Instead, the Complaint alleges that the mere inclusion of the credit-card expiration date on a receipt caused injury by exposing Plaintiff to "an increased risk of identity theft and credit and or debit card fraud."  (Compl. at ¶ 45.)

Congress passed FACTA in 2003, amending the Fair Credit Reporting Act of 1970 ("FCRA"), 15 U.S.C. § 1681, *et seq.*, to "prevent identity theft, improve resolution of consumer disputes, improve the accuracy of consumer records, make improvements in the use of and access to, credit information, and for other purposes."  Pub. L. No. 108-159, 117 Stat. 1952

(2003) (codified at 15 U.S.C. §§ 1681a–x).  Section 1681c(g)(1) provides that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction."  15 U.S.C. § 1681c(g)(1).

If a violation of Section 1681c(g)(1) is negligent, a plaintiff may recover only actual damages.  15 U.S.C. § 1681o(a)(1).  Absent actual damages, recovery is limited to statutory damages of between $100 and $1,000, which are only available if a defendant willfully failed to comply with the statute.  15 U.S.C. § 1681n(a)(1)(A); *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56–57 (2007).  Here, the Complaint does not claim actual damages; it claims only statutory penalties for willful violations.  (Compl. at ¶¶ 46, 47(B).)  The Complaint also seeks to recover punitive damages, costs, attorneys' fees, and interest.  (Compl. at ¶ 47.)

The Legislature's intent in enacting FACTA was to enable consumers to recover damages for actual identity theft, not theoretical identity theft: "Congress is not interested in specifying the content of a credit card receipt as a part of some abstract, academic exercise.  Rather, Congress is interested in preventing the actual harm of real identity theft."  *Broderick v. 119TCbay*, LLC, 670 F. Supp. 2d 612, 619 (W.D. Mich. 2009).  The text of the statute and its legislative history support this intent.

Congress later passed the Credit and Debit Card Receipt Clarification Act of 2007 (the "Clarification Act"), which reiterated FACTA's goal of "prevent[ing] criminals from obtaining access to consumers' private financial and credit information . . . ."  Pub. L. No. 110-241, § 2(a)(1), 122 Stat. 1565 (codified at 15 U.S.C. § 1681n(d)).  Importantly, the Legislature further explained that "experts in the field agree that proper truncation of the card number, by itself as required by [FACTA], *regardless of the inclusion of the expiration date*, prevents a potential fraudster from perpetrating identity theft or credit card fraud."  *Id*. at § 2(a)(6) (emphasis added).

-4-

In the Clarification Act, the Legislature noted that "[t]he purpose of [FACTA] is to ensure that consumers suffering from any actual harm to their credit or identity are protected while simultaneously limiting abusive lawsuits that do not protect consumers but only result in increased cost to business and potentially increased prices to consumers." *Id*. at § 2(b).  This caused "a significant burden on the hundreds of companies that have been sued," which "could well raise prices to consumers without corresponding consumer protection benefit."  *Id*. at § 2(a)(7).  To combat this burden, the Legislature created a temporary safe harbor for merchants that printed only the expiration date on receipts but otherwise substantially complied with the statute. *Id*. at § 3.  The Legislature noted that misinterpretation and misleading publicity created confusion regarding FACTA's requirements because "[m]any merchants understood that the Act's requirement would be satisfied by truncating the account number down to the last 5 digits based in part on the language of the provision as well as the publicity in the aftermath of the passage of the law." *Id*. at § 2(a)(3).  While this suit falls outside of the temporary safe harbor period, the Legislature's actions and comments provide helpful context for the injury and willfulness alleged here.

## ARGUMENT

## I.   THE COURT SHOULD DISMISS THIS SUIT FOR LACK OF SUBJECT-MATTER JURISDICTION.

In May 2016, the Supreme Court in *Spokeo, Inc. v. Robins* clarified the requirements for Article III standing for claimed statutory violations, and did so in a way that confirms Plaintiff's suit should be dismissed.  *Spokeo* holds that a plaintiff's assertion of a statutory violation, by itself, is insufficient to demonstrate an "injury-in-fact" essential for standing.  Instead, *Spokeo* requires that a plaintiff demonstrate the existence of an injury that is concrete—that is, real and not abstract—in order to have standing to sue.  Article III standing also requires a plaintiff to

demonstrate an injury that is imminent—as opposed to conjectural and hypothetical—and sufficiently particular to her.

In this case, however, Plaintiff merely claims to have suffered an "increased risk of identity theft" that is abstract, speculative, objectively improbable, and does not suggest that an injury has occurred or is imminent, as *Spokeo* and numerous cases require.  Moreover, Plaintiff fails to show that she suffered any particularized injury because there is no allegation that the receipt was seen, much less possessed, by anyone other than Plaintiff herself.  Plaintiff's lack of standing divests this Court of subject-matter jurisdiction, which requires dismissal of this suit.

### A.    *Plaintiff's Lack of Article III Standing Warrants Dismissing This Suit for Lack of Subject-Matter Jurisdiction under Rule 12(b)(1).*

Article III of the U.S. Constitution limits the jurisdiction of federal courts to "cases and controversies."  U.S. CONST. art. III, § 2.  One element of this "bedrock requirement" is that plaintiffs "must establish that they have standing to sue."  *Raines v. Byrd*, 521 U.S. 811, 818 (1997); *see also Crane v. Johnson*, 783 F.3d 244, 251 (5th Cir. 2015) (plaintiff's burden to establish standing).  To meet this burden, a plaintiff must show that she "(1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo*, 136 S. Ct. at 1547.

When resolving a jurisdictional challenge to standing under Rule 12(b)(1), a court may dismiss the case based solely on the complaint, accepting the allegations as true.  *See Crane*, 783 F.3d at 251.  Although "general factual allegations of injury resulting from the defendant's conduct may suffice," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), the complaint must still "clearly and specifically set forth facts sufficient to satisfy these Article III standing requirements," *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).

**B.** **Plaintiff's Allegations of "Increased Risk of Identity Theft and Credit Card Fraud" Are Insufficient to Confer Standing under Article III.**

The Supreme Court's *Spokeo* decision makes clear that, to establish standing under Article III, Plaintiff must demonstrate an injury-in-fact beyond the mere assertion that Fondren violated a provision of FACTA.  Plaintiff has not met this requirement.  At best, Plaintiff alleges that printing a credit-card expiration date on a receipt given to no one but Plaintiff herself creates an abstract and speculative increased risk of identity theft that is highly unlikely.   These allegations come nowhere close to demonstrating a concrete, imminent, and particularized injury. Dismissal is therefore required.

**1.** **In *Spokeo*, the Supreme Court held that merely alleging a statutory violation does not confer a plaintiff with standing to sue.**

In *Spokeo*, the U.S. Supreme Court resolved a circuit-split on whether the jurisdictional requirement of an injury-in-fact is automatically satisfied when a plaintiff claims a statutory violation, holding that it is not.  Among other requirements, a plaintiff must show a "concrete injury," that is, a "*de facto*" injury which "actually exist[s]" and is "real, and not abstract." *Spokeo*, 136 S. Ct. at 1548 (internal quotation marks omitted).

In *Spokeo*, the plaintiff brought a claim under the FCRA, which FACTA amended, and which has a similar willfulness requirement.  *Id*. at 1546.  The district court dismissed the complaint for failure to plead injury-in-fact, but the Ninth Circuit reversed, finding that "the violation of a statutory right is usually a sufficient injury-in-fact to confer standing . . . . [and plaintiff's] alleged violations of his statutory rights [were] sufficient to satisfy the injury-in-fact requirement of Article III."   *Id*. (internal quotation marks omitted).   The Supreme Court, however, concluded that the Ninth Circuit's analysis was "incomplete."  *Id*. at 1545.  The Court held that even if a plaintiff claims her statutory rights were violated, that does not itself demonstrate that she has standing to sue.  *See id*. at 1548.

The *Spokeo* Court emphasized, "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Id*. at 1547–48. "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id*. at 1549. Regardless of the availability of statutory damages, the plaintiff still has the burden to show a concrete injury in order to demonstrate standing. *See id*.

> **2.      Plaintiff's speculation about increased risks of potential future injury does not constitute a concrete or imminent injury necessary to establish standing.**

*Spokeo* makes clear that the mere fact Plaintiff alleged a violation of FACTA cannot confer her with standing to sue. *See id*. at 1549 (a "bare procedural violation, divorced from any concrete harm" is insufficient). Under *Spokeo*, Plaintiff still must establish a concrete injury, that is, an injury that "actually exist[s]," and that is "real, and not abstract." *Id*. at 1548 (internal quotation marks omitted). *Spokeo* further noted that the injury-in-fact requirement also requires showing that the purported injury is "'actual or imminent, not conjectural or hypothetical.'" *Id*. (quoting *Lujan*, 504 U.S. at 560). Nothing in the Complaint satisfies these requirements.

The Complaint plainly fails to allege any actual and concrete harm. All that Plaintiff alleges is "an increased risk of identity theft and credit and or debit card fraud" based on the claimed printing of an expiration date on a receipt, with a redacted credit-card number, that is presumably still in Plaintiff's possession. (Compl. at ¶ 45.) There is no allegation that anyone else saw the receipt, much less obtained or attempted to use its information in a manner that actually caused harm. Thus, Plaintiff's claimed increased risk of injury at most speculates that there is an abstract *possibility* of future injury. That is wholly insufficient to satisfy Article III.

Indeed, even before deciding *Spokeo*, the Supreme Court repeatedly rejected the mere possibility of future injury as a basis for standing.  See *Clapper v. Amnesty Int'l, USA*, 133 S. Ct. 1138, 1148 (2013); *Lujan*, 504 U.S. at 564 n.2 (allegations of future harm at some indefinite time cannot be an actual or imminent injury); *Los Angeles v. Lyons*, 461 U.S. 95, 105–106 (1983) (future harm that depends on future actions by a third-party is insufficient).  As *Clapper* explained, allegation of possible future harm "does not satisfy the requirement that threatened injury must be certainly impending."  133 S. Ct. at 1148.  And as *Lujan* stressed, a "conjectural or hypothetical" injury cannot satisfy Article III's requirements.  504 U.S. at 560 (internal quotation marks omitted); *see also Spokeo*, 136 S. Ct. at 1548 (reiterating this requirement).

Moreover, the risk of harm must be "substantial" in order to establish an injury-in-fact. *Clapper*, 133 S. Ct. at 1150 n.5.  Focusing on this requirement, a recent decision from the Southern District of Texas dismissed a suit where a plaintiff similarly alleged an "increased risk" of "future identity theft/fraud" due to a security breach of the plaintiff's health care provider. *Peters v. St. Joseph Servs. Corp.*, 74 F. Supp. 3d 847, 854 (S.D. Tex. 2015) (Hoyt, J.).  The *Peters* court noted that a mere increased risk of identity theft or fraud due to the security breach did not make it substantial enough to satisfy Article III.  *Id.* at 855.  "The allegation that risk has been increased does not transform that assertion into a cognizable injury."  *Id.*

Based on these same principles, courts throughout the country have rejected similar allegations of increased risk arising from access to personal information as insufficient to satisfy the injury-in-fact requirement, when—as here—there is no allegation that the information was actually misused.  *See, e.g., Green v. eBay Inc.*, No. 14–1688, 2015 WL 2066531, at *4 (E.D. La. May 4, 2015) (finding no injury-in-fact for plaintiff claiming increased risk of future identity theft or fraud whose information was compromised by data breach, but had not been misused); *Strautins v. Trustwave Holdings, Inc.*, 27 F. Supp. 3d 871, 876–79 (N.D. Ill. 2014) (finding no

injury-in-fact despite assertion of "imminent, immediate and continuing increased risk of identity theft and identity fraud" because plaintiff's information, though compromised by data breach, had not yet been misused); *Key v. DSW, Inc.*, 454 F. Supp. 2d 684, 686, 690 (S.D. Ohio 2006) (concluding "increased risk of financial harm by an unknown third party at an unidentified point in the indefinite future [is] too speculative to constitute a cognizable injury to confer standing"); *Giordano v. Wachovia Secs., LLC*, No. 06-476 (JBS), 2006 WL 2177036, at *4 (D.N.J. Jul. 31, 2006) (mere potential that the plaintiff may suffer identity theft does not show a concrete injury; "Plaintiff's claims, at best, are speculative and hypothetical injuries").[2]

Mere speculation about the risk of potential identity theft also is inadequate because it relies on hypothetical future conduct of an unknown third party. "A plaintiff . . . lacks standing if his 'injury' stems from an indefinite risk of future harms inflicted by unknown third parties." *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) (citing *Lujan*, 504 U.S. at 564); *see also Lyons*, 461 U.S. at 105–106 (holding threat of future injury by a third party insufficient injury to confer standing); *Key*, 454 F. Supp. 2d at 691.

In this case, the mere risk that Plaintiff *might* become a victim of identity theft at some point in the future, and at the hands of unknown third-parties, is not an imminent or concrete injury. At most, Plaintiff's allegations raise an abstract and speculative possibility of harm that depends on actions of unknown third parties, rather than articulating the type of concrete or at least imminent injury that Article III demands. *See Spokeo*, 136 S. Ct. at 1549–50; *Clapper*, 133 S. Ct. at 1148; *Lujan*, 504 U.S. at 564 & n.2.

---

[2] Other courts too have applied Clapper in the data breach context to reject the "increased risk" theory of standing. *See, e.g.*, *In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 27–29 (D.D.C. 2014); *Galaria v. Nationwide Mut. Ins. Co.*, 998 F. Supp. 2d 646, 654–56 (S.D. Ohio 2014); *Polanco v. Omnicell, Inc.*, 988 F. Supp. 2d 451, 466 (D.N.J. 2013).

Plaintiff's alleged increased risk of identity theft is improbable even if Plaintiff does not possess the receipt with its redacted credit-card number.  When passing the Clarification Act, the Legislature recognized that merely disclosing a credit-card expiration date, without further disclosing the credit-card number, is useless to identity thieves.  *See* Clarification Act § 2(a)(6) ("[P]roper truncation of the card number, *by itself* . . . , regardless of the inclusion of the expiration date, prevents a potential fraudster from perpetrating identity theft or credit card fraud.").  Furthermore, Congress acknowledged that

> [a]lmost immediately after the deadline for compliance passed, hundreds of lawsuits were filed alleging that the failure to remove the expiration date was a willful violation of the Fair Credit Reporting Act even where the account number was properly truncated.  None of these lawsuits contained an allegation of harm to any consumer's identity.

*Id*. at § 2(a)(4)–(5).  Congress thus recognized that an unredacted expiration date on a receipt cannot alone create a real or imminent risk of harm.

Congress' observation comports with court decisions, which likewise observe that "without most of the credit card's 15 or 16 digits, the risk [of identity theft] is zero; adding the expiration date to the last four numbers does not pose a risk."  *Bormes v. United States*, 759 F.3d 793, 798 (7th Cir. 2014).  Indeed, "it appears virtually impossible for the inclusion of the expiration date on a credit card or debit card receipt to result in identity theft or any other actual harm."  *Soualian v. Int'l Coffee & Tea LLC*, No. CV 07-502-RGK (JCx), 2007 WL 4877902, at *3 (C.D. Cal. Jun. 11, 2007); *see also* Michael E. Chaplin, *What's So Fair About the Fair and Accurate Credit Transactions Act?*, 92 MARQ. L. REV. 307, 331 (2008) ("[T]he inclusion of the expiration date does not increase the risk of identity theft when the receipt does not otherwise reveal more than the last five digits of the credit or debit card . . . .").

Here, Plaintiff admits that Fondren properly redacted her credit-card number; she only complains that Fondren did not redact the expiration date.  Accepting this allegation as true, no

resulting harm is concrete or imminent.  Plaintiff's inability to make this showing warrants dismissal for lack of standing.

### 3.  Plaintiff fails to demonstrate a particularized injury.

In addition to lacking sufficient concreteness and imminence to establish an injury-in-fact, the Complaint also fails to show that Plaintiff was injured "in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1.  In the class action context, "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class."  *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (internal quotation marks omitted).  Put another away, a plaintiff must show that she was personally injured by defendant's violation of a legal duty owed to the plaintiff individually, not just that the defendant caused an injury or violated a legal duty.  *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 320 (5th Cir. 2002).

Despite purporting to represent a class, Plaintiff has not shown that she has been *personally* injured; her single allegation is that she *herself* was provided a receipt with her credit-card expiration date on it.  (Compl. at ¶ 21); *see Rivera*, 283 F.3d at 320. Thus, even if it were conceivable that other potential class members were placed at risk of identity theft, Plaintiff was not.  Plaintiff's lack of a particularized injury underscores that this suit should be dismissed.

## II.   ALTERNATIVELY, THIS SUIT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

While Plaintiff's lack of standing divests this Court of subject-matter jurisdiction to resolve the merits, the Complaint alternatively should be dismissed pursuant to Rule 12(b)(6).  Plaintiff's FACTA claim for statutory penalties is premised on Fondren's alleged willful violation of FACTA.  Yet the Complaint does not—and cannot—plausibly plead the crucial "willfulness" requirement.  The law is clear: allegations that Fondren was aware of the statute

and violated it are insufficient.  Instead, Plaintiff must plead in more than a conclusory way that Fondren knew it was violating FACTA, which she has not done.  Even if this Court had jurisdiction, it should dismiss the suit for failure to state a cognizable FACTA claim.

### A.    To Avoid Dismissal under Rule 12(b)(6), Plaintiff Must State a Plausible Claim for Relief.

Under Rule 12(b)(6), a district court shall dismiss any action or any claim within an action for failure to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must also allege enough facts in her complaint sufficient "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Montoya*, 614 F.3d at 148.

"The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a Complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal citations and quotation marks omitted).  "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the court to draw on its judicial experience and common sense."  *Id.* at 679.  "Dismissal can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Bailey v. State Farm Lloyds*, No. H-00-3638, 2001 WL 34106907, at *2 (S.D. Tex. Apr. 11, 2001) (Gilmore, J.).

Furthermore, the pleading standard requires "more than the mere possibility of misconduct."  *Iqbal*, 556 U.S. at 679.  Although detailed factual statements are not required,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.  A pleading that only "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).  Conclusory statements "are not entitled to the assumption of truth." Id. at 679.

### B.     *Plaintiff Failed to Plead a Plausible Claim for a Willful Violation of FACTA.*

Because Plaintiff has not sought actual damages, her recovery is limited to statutory penalties under the statute.  (Compl. at ¶ 46); 15 U.S.C. § 1681n(a)(1)(A); *Safeco*, 551 U.S. at 56–57.  In order to sufficiently plead her sole cause of action for statutory penalties, Plaintiff is required to plausibly plead, and eventually prove, that any violation of FACTA was *willful*. *Safeco*, 551 U.S. at 56–57.  Mere negligent violations do not entitle Plaintiff to the statutory damages she seeks.  *See* 18 U.S.C. § 1681n(a)(1)(A).  Yet Plaintiff has not and cannot allege any well-pleaded facts to plausibly show a willful violation of FACTA by Fondren.

The Complaint formulaically asserts that Fondren willfully violated FACTA.  (Compl. at ¶¶ 3, 41, 43, 44.)  Under *Iqbal*, no inferences may be drawn from these conclusory assertions, and they are not entitled to the assumption of truth.  556 U.S. at 678–79.

The only facts pleaded that relate to willfulness focus on what *other companies* may or should have known about FACTA, as opposed to what Fondren knew about FACTA.  (Compl. at ¶ 37 ("[M]any companies such as VISA and MasterCard devised and implemented policies . . . ."); *id*. at ¶ 46 ("Defendant's business peers and competitors brought their credit and debit card receipt printing processes in compliance with FACTA . . . .")).  In the Complaint, only a single paragraph attempts to address *Fondren's* supposed knowledge and intent:

> Defendant also knew that its electronic receipt printing equipment (inclusive of software and other codes) were configured and/or otherwise outdated such that they would print and were printing credit card and or debit card receipts that displayed the card's expiration date printed on each customer's receipt in violation of FACTA.  Despite this knowledge, Defendant decided to forego and

> otherwise avoid the expense, time, and other resources required to properly configure and update its electronic receipt printing equipment (inclusive of software and other codes) such that they would not print information (such as the credit card expiration date) prohibited by FACTA.  Thus, Defendant's violations of FACTA were not accidental oversights, but were a means of avoiding the additional expense, time, and other resources required to properly configure and update its electronic receipt printing equipment.

(Compl. at ¶ 39.) These allegations merely state that Fondren *knew it was printing* expiration dates on credit-card receipts; they do not state that Fondren knew this was inappropriate, an allegation that is indispensable to state a willful violation.  Moreover, the Complaint does not explain why Fondren would have redacted credit-card numbers from receipts, but disregarded redacting the expiration dates.  Plaintiff's inability to allege that Fondren knew of FACTA's expiration-date requirement and willfully disregarded it is fatal to her claim.

"A motion to dismiss a claim exclusively seeking punitive or statutory damages under § 1681c(g)(1) of FACTA is properly granted if willfulness is not adequately pleaded." *Andrade v. Desert Champions LLC*, 113 F. Supp. 3d 1020, 1025 (N.D. Cal. 2015).  Establishing willfulness is a high burden; it requires showing "a voluntary, deliberate, or intentional violation." *Vidoni v. Acadia Corp.*, No. 11-cv-00448-NT, 2012 WL 1565128, at *4 (D. Maine Apr. 27, 2012) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132–33 (1988)).

It is not enough to plausibly plead that Fondren was aware of FACTA.  "[T]o survive defendant's motion to dismiss, plaintiff's Complaint must plead sufficient facts to support a plausible inference that *defendant knew that its conduct was violating the statute*, and not simply that defendant knew about the existence of the statutory provision at issue." *Crupar-Weinmann v. Paris Baguette Am., Inc.*, No. 13 Civ. 7013 (JSR), 2014 WL 2990110, at *4 (S.D.N.Y. Jun. 29, 2014) (emphasis added), *rev'd on other grounds*, No. 14-3709 (2d Cir. Jun. 30, 2016) (holding that the district court must first determine if it has standing in light of the intervening *Spokeo* decision).  Mere awareness of the law is insufficient to show a willful violation of FACTA.  *Id.*;

*see also Vidoni*, No. 11-cv-00448-NT, 2012 WL 1565128, at *4 ("Merely being aware of a statute . . . is insufficient to state a claim for willfulness.  In cases where the Defendant is aware of a statute's requirements, the Plaintiff must also allege that there was something more than a negligent violation . . . ."); *Miller-Huggins v. SpaClinic, LLC*, No. 09 C 2677, 2010 WL 963924, at *2 (N.D. Ill. Mar. 11, 2010) (granting motion to dismiss where complaint alleged only that FACTA's requirements were well-publicized because that allegation was not specific to defendant and permitted an inference of negligence only); *Komorowski v. All-Am. Indoor Sports, Inc.*, No. 13-2177-SAC, 2013 WL 4766800, at *3 (D. Kan. Sept. 4, 2013) (rejecting claimed "extensive publicity about FACTA" as insufficient to "allege a *willful* violation of this civil statute") (emphasis in original).

Several district court decisions are particularly instructive.  While two of them, *Crupar-Weinmann v. Paris Baguette* and *Katz v. Donna Karan*, were vacated on appeal and remanded "[g]iven the change *Spokeo* effected in the standing doctrine" and "to allow the district courts to address any standing questions in the first instance," their reasoning on plausible willfullness pleading in this context is  instructive.[3]

In *Paris Baguette*, Judge Rakoff dismissed the plaintiff's claim for statutory damages under FACTA because, like the Complaint here, the plaintiff failed to adequately plead facts showing a willful violation of FACTA.  2014 WL 2990110, at *4–5.  The court, applying *Iqbal*, noted that the complaint contained factual allegations that were "generic," "merely conclusory," and "fail[ed] to establish either defendant's knowledge of FACTA or its knowing or reckless

---

[3] Both cases were pending before the Second Circuit at the time the Original Complaint was filed, *Spokeo* was decided, and Fondren filed its initial Motion to Dismiss.  After Fondren's initial Motion to Dismiss was filed, the Second Circuit issued a summary order vacating and remanding both cases for further consideration in light of *Spokeo's* requirements for Article III standing.  Summary Order at 3, *Crupar-Weinmann v. Paris Baguette Am., Inc.*, No. 14-3709 (2d Cir. Jun. 30, 2016); Summary Order at 3, *Katz v. Donna Karan*, No. 15-0464 (2d Cir. Jun. 30, 2016).  Fondren then filed a Notice of Supplemental Authority bringing this development to the Court's attention, which it incorporates for all purposes herein.  (Dkt. 17.)

noncompliance." *Id*. Though the plaintiff pleaded a few facts specific to the defendant, those facts merely showed that the defendant was aware of FACTA and its requirements, *not* that the defendant was aware it was violating FACTA. *Id*. Significantly, the plaintiff offered no facts that could explain why or how a defendant who had made *some* effort to protect its consumers by redacting the credit-card number would then willfully disregard FACTA's expiration date requirement. *Id*. The court concluded that the plaintiff's allegation "at best . . . supports an inference that defendant *negligently* violated FACTA, which does not suffice to state a claim in a case such as this, in which plaintiff does not allege actual damages." *Id*. (emphasis in original).

A similar failure to allege enough facts showing willfulness led to dismissal of a FACTA claim in *Katz v. Donna Karan*, No. 14 Civ. 740 (PAC), 2015 WL 405506, at *2 (S.D.N.Y. Jan. 29, 2015), *rev'd on other grounds*, No. 15-0464 (2d Cir. Jun. 30, 2016) (holding that the district court must first determine if it has standing in light of the intervening *Spokeo* decision). The *Katz* court held:

> Plaintiff's complaint is devoid of any well-pleaded facts which allow the plausible inference that Defendants willfully, knowingly, or recklessly violated FACTA. Certainly, there are sufficient factual allegations to infer Defendants knew of FACTA's applicability, but there are no factual allegations supporting a plausible inference that Defendants knew their conduct violated the truncation requirement or that Defendants consciously chose to violate FACTA.

*Id*. The court found that the plaintiff's attempt to pass off a showing of negligence as recklessness "render[ed] the pleading standards imposed by Rule 12(b)(6) meaningless; in practice, it would essentially permit all plaintiffs alleging willful FACTA violations to bypass Rule 12(b)(6) and proceed to discovery/summary judgment." *Id*.

The same result was reached in *Torongo v. Robert G. Roy*, which granted a motion to dismiss because the plaintiff failed to plead more than that the defendant knew of FACTA. No. 15-81490-MIDDLEBROOKS, 2016 WL 1388852, at *3–4 (S.D. Fla. Apr. 6, 2016).

As the *Paris Baguette*, *Donna Karan*, and *Toronjo* decisions show, established pleading standards require Plaintiff to allege more than a "sheer possibility that [Fondren] has acted unlawfully." *Iqbal*, 556 U.S. at 678.  Plaintiff's bare factual allegations, even when accepted as true, do not plausibly allege a willful, knowing, or even reckless violation of FACTA.  (Compl. at ¶ 39.)  At most, these allegations support an inference that the requirements of FACTA were publicized, such that Fondren should have been aware of them.  (Compl. at ¶ 37 (referencing a 2003 press conference held on FACTA), ¶ 38 (referencing a "business alert" issued by the FTC), ¶¶ 35–36 (alleging that credit-card merchants and banks sent Fondren notices of the law)).  However, the Complaint makes no allegation that Fondren *actually knew* about these press releases, business alerts, or boilerplate notifications, much less that Fondren understood them and willfully continued to print credit-card expiration dates in violation of FACTA.

Further, it is not enough to allege that other companies knew about FACTA's existence or that FACTA was well-publicized.  (Compl. at ¶ 42.)  "[T]he fact that most other businesses may have complied with FACTA raises no *specific* inference about [the defendant's] willfulness . . . .  Under *Iqbal* and *Twombly*, there has to be something more." *Gardner v. Appleton Baseball Club, Inc.*, No. 09-C-705, 2010 WL 1368663, at *5 (E.D. Wis. Mar. 31, 2010) (emphasis in original); *see also Miller-Huggins*, 2010 WL 963924, at *2 ("Plaintiff alleges that FACTA's requirements were well-publicized and that credit card companies required compliance with the statute, but these allegations are not specific to the defendant.").

Critically, there are no allegations supporting the inference that Fondren knew it was violating FACTA.  Such an allegation would defy common sense, given the allegation that Fondren redacted the more important card numbers—just not the expiration dates.  *See Paris Baguette*, 2014 WL 2990110, at *4; *see also Iqbal*, 556 U.S. at 679 ("common sense" informs whether a plausible claim is pleaded).  In fact, Fondren had updated its software so that it would

-18-

not print more than the requisite five digits of the card numbers on each receipt.  (Compl. at ¶ 31.)  As in *Paris Baguette*, 2014 WL 2990110, at *4, the Complaint here offers no facts explaining why a defendant who had made *some* effort to protect its customers by truncating the card number would then willfully disregard FACTA's expiration-date requirement.

At most, the Complaint alleges well-pleaded facts that permit the Court to plausibly infer that Fondren violated FACTA, Compl. at ¶ 41 (describing the inclusion of credit-card expiration dates on receipts), and that Fondren should have been aware of FACTA requirements, *id.* at ¶¶ 35–38, 42 (describing FACTA publicity by credit-card companies, government agencies, and trade groups).  But the Complaint does not plausibly allege that Fondren willfully violated FACTA.  At best, the allegations here support an inference that Fondren *negligently* violated FACTA, which does not suffice to state a claim for statutory damages premised on a willful violation.  The Complaint must therefore be dismissed.

### C.      Any Request to Amend the Pleading Should Be Denied as Futile.

Plaintiff already amended her complaint in the face of the initial Motion to Dismiss.  Plaintiff should not be afforded another opportunity to amend her pleading.

Leave to amend pleadings may be permitted where appropriate after a Rule 12(b)(6) motion to dismiss has been granted.  FED. R. CIV. P. 15(a).  "However, leave to amend is by no means automatic, and the decision to grant or deny leave to amend 'is entrusted to the sound discretion of the district court.'"  *Bynane v. Bank of N.Y. Mellon*, No. H-15-2901, 2015 WL 8764272, at *8 (S.D. Tex. Dec. 15, 2015) (Atlas, J.) (quoting *Pervasive Software Inc. v. Lexware GmbH & Co.*, 688 F.3d 214, 232 (5th Cir. 2012)).  "The court may deny leave to amend . . . if the defects are incurable or the plaintiffs have already alleged their best case."  *Pierce v. Hearne Indep. Sch. Dist.*, 600 F. App'x 194, 200 (5th Cir. 2015).

In deciding whether to permit repleading, the court should consider the futility of amendment.  *Legate v. Livingston*, No. 15-40079, 2016 WL 2909229, at *3 (5th Cir. May 18, 2016).  "[A]n amendment is considered futile if it would fail to state a claim upon which relief could be granted."  *Id*.  Likewise, courts routinely deny leave to amend where a plaintiff has already attempted amendment and failed to state a claim.  *See, e.g., U.S. ex rel. Adrian v. Regents of Univ. of Cal.*, 363 F.3d 398, 403–404 (5th Cir. 2004).

Here, Plaintiff's admission that Fondren properly redacted the credit-card numbers, Compl. at ¶ 41—the critical aspect of FACTA—demonstrates that she cannot "plausibly plead a claim for willful violation of FACTA, even if she were given the opportunity to replead."  *Paris Baguette*, 2014 WL 2990110, at *5 (denying leave to amend).  The allegation that Fondren did not redact expiration dates as well cannot rise to the level of a willful intent to violate FACTA, and any contrary allegations would be implausible under *Iqbal* and defy common sense.  *See Iqbal*, 556 U.S. at 679.  Because Plaintiff already alleged her best case and any further amendment would be futile, dismissal without leave to amend is appropriate in this case.

Finally, the Amended Complaint was filed nearly two weeks after Fondren's initial Motion to Dismiss was filed.  (Dkt. No. 20.)  The Amended Complaint fails to add any new factual bases to Plaintiff's claims, and it does not address or even attempt to remedy the pleading defects, of which Plaintiff had ample notice.  Given Plaintiff's latest amendment, Plaintiff should not be given an additional opportunity to replead.

## PRAYER

Defendant Fondren respectfully requests that this Court dismiss Plaintiff Roxanne Gant's claim against it with prejudice.  Fondren also requests such other and further relief to which it may be justly entitled.

Dated:          July 29, 2016              Respectfully submitted,
                Houston, Texas
                                           BRACEWELL LLP


                                 By:       /s/Christopher L. Dodson
                                           Christopher L. Dodson
                                           *Attorney-In-Charge*
                                           S.D.Tex. Bar No. 613937
                                           Texas State Bar No. 24050519
                                           711 Louisiana Street, Suite 2300
                                           Houston, Texas  77002-2781
                                           713-223-2300 (telephone)
                                           713-221-1212 (facsimile)
                                           chris.dodson@bracewelllaw.com

                                           ATTORNEYS FOR DEFENDANT
                                           FONDREN ORTHOPEDIC GROUP L.L.P.

Of Counsel:

BRACEWELL LLP

Joseph M. Cox
S.D.Tex. Bar No. 20331
Texas State Bar No. 04950200
1445 Ross Avenue, Suite 3800
Dallas, Texas 75202
(214) 758-3800 (telephone)
(800) 404-3970 (facsimile)
joe.cox@bracewelllaw.com

Yvonne Y. Ho
S.D.Tex. Bar No. 1045843
Texas State Bar No. 24055673
711 Louisiana Street, Suite 2300
Houston, Texas  77002-2781
713-223-2300 (telephone)
(800) 404-3970  (facsimile)
yvonne.ho@bracewelllaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been forwarded to counsel of record pursuant to the Federal Rules of Civil Procedures via the Court's electronic filing service on the 29th day of July, 2016.

*/s/ Christopher L. Dodson*
Christopher L. Dodson
